Argued and submitted March 13, affirmed December 17, 1997

STATE OF OREGON,
*Respondent,*

*v.*

GUY EDWARD HOWARD,
*Appellant.*

(9507-44949; CA A92261)

950 P2d 395

Hari Nam S. Khalsa, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Rives Kistler, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

**EDMONDS, J.**

Defendant appeals from two convictions of forgery in the second degree. ORS 165.007(1). He assigns as error the trial court's denial of his motion for a directed verdict of acquittal. We affirm.

Defendant was employed as a driver of a milk truck for a dairy and delivered milk to his employer's customers. When he made a delivery, he filled out a two-part invoice. One copy went to the customer and the other copy went to defendant's employer. Defendant then collected the money owed on the invoice from the customer and delivered the money and the duplicate original to the employer. The state's theory is that, on the occasions charged in the complaint, defendant created a different duplicate original after he delivered the copy of the invoice to the customer and collected the money. The new invoice that he prepared showed a lesser amount of money than what was paid by the customer. He then delivered the new invoice and the lesser amount to the employer and kept the remaining money.

Defendant was originally charged with two counts of theft in the second degree[1] as well as the forgery counts. In his motion for a directed verdict of acquittal, defendant argued:

> "Well, Judge, I moved that [the state] had not proven the elements of forgery, that this, these receipts were an instrument. They haven't proven the elements. They haven't proven how much milk had been delivered. They had not proven by—they hadn't placed any evidence in the record regarding the amount of money that changed hands. The thing is that they haven't proven that he wrote the receipts, either. There's basically no evidence."

The trial court allowed the motion as to the counts alleging theft and ruled that there "was a jury question" as to the forgery counts.

---

[1] A person commits the crime of theft in the second degree if the total value of the property in a single or aggregate transaction is under $750, subject to an exception not applicable to this case. ORS 164.045. Theft in the third degree is theft of property of a value under $50. ORS 164.043.

On appeal, defendant argues that the evidence was insufficient to convict him of forgery because "he signed his own name to a document that he was authorized to make out." He elaborates:

> "The crime of forgery is really not about misappropriation of funds or even about deception regarding the workings of a particular transaction. Rather, forgery is specifically about the signer of a document using a signature not his own in order to make it appear that he is the 'maker' of the document. This did not occur in the present case. * * * Defendant did not sign the invoices, he did not try to pass himself off as someone who he was not and he did not falsely purport to have authority to prepare a written instrument, which he did, in fact, have authority to prepare."

ORS 165.007(1) provides, in part:

> "A person commits the crime of forgery in the second degree if, with intent to injure or defraud, the person:

> "(a) Falsely makes, completes or alters a written instrument[.]"

ORS 165.002(4) provides:

> "To 'falsely make' a written instrument means to make or draw a complete written instrument in its entirety, or an incomplete written instrument which purports to be an authentic creation of its ostensible maker, but which is not, either because the ostensible maker is fictitious or because, if real, the ostensible maker did not authorize the making or drawing thereof."

ORS 165.002(1) provides:

> " 'Written instrument' means any paper, document, instrument or article containing written or printed matter or the equivalent thereof, whether complete or incomplete, used for the purpose of reciting, embodying, conveying or recording information or constituting a symbol or evidence of value, right, privilege or identification, which is capable of being used to the advantage or disadvantage of some person."

ORAP 5.45(2) provides that

"[n]o matter assigned as error will be considered on appeal unless it was preserved in the lower court and assigned as error in the party's opening brief, provided that the appellate court may consider errors of law apparent on the face of the record."[2]

Defendant does not assign as error the trial court's rulings that the modified duplicate originals created by him were "instruments" within the meaning of ORS 165.002(1) or whether there was evidence that he had created the modified duplicate originals. Rather, defendant argues for the first time on appeal that the making of a "genuine" instrument for the purpose of fraud does not constitute the crime of forgery. Whatever the merits of that issue are, it was not preserved before the trial court, and we will not consider it as error apparent on the record.

Affirmed.

---

[2] The purpose of the rule of preservation of error is to allow the parties to present fully their positions in the trial court and to permit the trial court to understand and correct any error. *State v. Brown*, 310 Or 347, 356, 800 P2d 259 (1990).